AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❐ Original



**CLERK'S OFFICE**
**A TRUE COPY**
Dec 20, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with Instagram account<br>username "qianbacklilbih", as further described<br>in Attachment A1 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **23-M-543 (SCD)**

Matter No. 2023R00201

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      1-3-24      *(not to exceed 14 days)*

❐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Hon. Stephen C. Dries      .
                                                                              *(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ❐ for _____ days *(not to exceed 30)*      ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      12-20-23. 2:40 pm

*Judge's signature*

City and state:      Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A1
**Property to Be Searched**
**Matter Number 2023R00201**

This warrant applies to information associated with Instagram account "**qianbacklilbih**", that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

Case 2:23-mj-00543-SCD    Filed 12/20/23    Page 3 of 69    Document 1

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2023R00201**

## I.  Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) from July 1, 2022 to present, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.   All business records and subscriber information, in any form kept, pertaining to the Target Accounts, including:

1.   Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.   All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.   Length of service (including start date), types of services utilized, purchases, and means and sources of payment, including any credit card or bank account number and billing records;

4.   Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.   All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

6.   All advertising information, including advertising IDs, ad activity, and ad topic preferences;

7. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from July 1, 2022, to present;

8. Privacy and account settings, including change history; and

9. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content whether created, uploaded, or shared by or with the Target Accounts, records, and other information relating to videos including live videos and videos on IGTV, images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, July 1, 2022, to present;

C. All content, records, and other information relating to communications sent from or received by the Target Accounts from July 1, 2022, to present, including but not limited to:

1. The content of all communications sent from or received by the Target Accounts, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Target Accounts, including dates and times, methods, sources, and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content present;

5. All photographs and images in the user gallery for the account;

6. All location data associated with the account, including geotags;

7. All data and information that has been deleted by the user;

8. All records of Instagram searches performed by the account, including all past searches saved;

9. All associated logs and metadata;

Page 2

D.	All content, records, and other information relating to all other interactions between the Target Accounts and other Instagram users from July 1, 2022, to present, including but not limited to:

1.	Interactions by other Instagram users with the Target Accounts or its content, including posts, comments, likes, tags, follows (including unfollows, approved, and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.	All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.	All contacts and related sync information; and

4.	All associated logs and metadata.

E.	All records of searches performed by the account from July 1, 2022, to present; and

F.	All location information, including location history, login activity, information geotags, and related metadata from July 1, 2022, to present.

Within 14 days of the service of this warrant, Meta. shall deliver the information set forth above via United States mail or courier to: Task Force Officer Aaron Hoppe, 515 West Moreland Boulevard, Waukesha, Wisconsin 53188, or via email to: ahoppe@waukeshacounty.gov (preferred method).

## II.	Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER, and

Page 3

other identified and unidentified subjects during the period of July 1, 2022 to present, including,

for the Target Accounts listed on Attachment A, information pertaining to the following matters:

a. any information relating to Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER possession or purchase controlled substances;

b. lists of customers and related identifying information;

c. information related to types, amounts, and prices of firearm and drugs trafficked as well as dates, places, and amounts of specific transactions;

d. any information related to sources of firearms and drugs (including names, addresses, phone numbers, or any other identifying information);

e. communications related to drug and firearm trafficking, including electronic communications such as text and instant message;

f. any information recording Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER schedule or travel;

g. all bank records, checks, credit card bills, account information, and other financial records;

h. The identity of the person(s) who created, accessed, or used the Target Account, including records that help reveal the whereabouts of such person(s) and the chronological and geographic context of the access, use or events;

i. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

j. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

k. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

l. Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications,

other records, and information disclosed pursuant to this warrant in order to locate evidence,

fruits, and instrumentalities described in this warrant. The review of this electronic data may be

conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, case agents, including DEA, and Waukesha County Metro Drug Unit, HITDA, may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Case 2:23-mj-00543-SCD    Filed 12/20/23    Page 8 of 69    Document 1



CLERK'S OFFICE
A TRUE COPY
Dec 20, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with Instagram account username "qianbacklilbih", as further described in Attachment A1

)
)
)
)
)
)
)

Case No. **23-M-543 (SCD)**

Matter No. 2023R00201

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); & 846 | Distribution and possession with intent to distribute controlled substances; and Conspiracy to distribute and possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron Hoppe, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 12-20-23

_____
*Judge's signature*

City and state: Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account username "**qianbacklilbih**," "**yonbacklilbih,**" "**deadendent_quan**", and "**rre_double_r**" **(Target Accounts)** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered at 1601 Willow Road, in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.    I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present.  I have been a part of hundreds of state and federal investigations related to drug activity.

3.      I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

4.      I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded, including social media applications, on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers.

5.      I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846.  I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic

Page 2

devices, including by phone call, text message, electronic mail, messaging application, and social media.

6.　I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices, including social media. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement.  This would include evidence located on social media platforms.  During the course of my investigations, I have regularly used electronic evidence, including evidence from social media, relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7.　Based on my training, experience, I know conversations of narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through social media, like Instagram, and I am familiar with many of the methods used by individuals who attempt to use Instagram to illegally distribute controlled substances.  Further, I know drug traffickers will often post photos on social media, like Instagram of their drug trafficking conduct, including photos of drug proceeds, items purchased from drug trafficking, or controlled substances in which they are trafficking.  On numerous occasions, this electronic evidence from social media has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement, including connections between members of drug trafficking organizations. During the course of investigations, I have

regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8. I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

9. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

10. The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures. However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not

included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

11.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER, and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.     PROBABLE CAUSE

### A.  BACKGROUND

12.     Beginning in July 2022, Drug Enforcement Agency (DEA) and the Waukesha Metro Drug Unit, hereinafter referred to as "case agents," began investigating a drug trafficking organization (DTO) operating in the Eastern District of Wisconsin (WI) which involves Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Daniel RODRIGUEZ-PEREZ, Tasha M. BROWN, Qian COLLINS, and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this ADTO sells fentanyl, purported to be heroin, methamphetamines, cocaine, ghost guns, and switches (device which converts a semi-automatic firearm into a full-automatic firearm). Case agents also determined that members of the ADTO utilizing multiple residences and multiple

vehicles, including rental vehicles, to store and distribute their narcotics throughout the Eastern District of Wisconsin and travel out of state to obtain the controlled substances and firearms.

13. On April 11, 2023, Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, Tasha M. BROWN and others were indicted for numerous federal crimes including, violations of Title 18, United States Code, Sections 2(a), 922(o), 922(a)(6), 924(a)(2), 924(c), and 933(a)(1) and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D) and 846. Case agents continued their investigation into COLLINS and other DTO members.

## B. INVESTIGATION INTO RICO, COLLINS, and OWENS

### a. RICO

14. Case agents learned that CS 1 was arrested in Merrillville, Indiana with several kilos of fentanyl, with possible ties to the MERIWETHER ADTO.

15. On March 28, 2023, CS 1 provided information to the DEA that CS 2 was contacted by an individual known as "Loco." "Loco" was utilizing the phone number 786-208-2153. "Loco" requested CS 2 to fly to Los Angeles, CA in order to deliver a large amount of illegal narcotics. CS 1 met with "Loco" and stayed in the Los Angeles for a few days before departing. "Loco" provided CS 1 with a black Ford Flex bearing California license plate 9CYF241. "Loco" informed CS 1 that the narcotics were being stored in an aftermarket roof compartment. CS 1 then departed traveling from California to Milwaukee.

16. CS 1 was instructed to travel to a residence located at 9300 West Riverwoods Drive, Milwaukee, Wisconsin, which CS 1 described as an Airbnb. CS 1 arrived on an unknown date and parked in the garage as instructed and left the residence for a short time. CS 1 returned a short time later and took custody of the Ford Flex and departed the area. CS 1 then was instructed to travel to

Page 6

Cincinnati, Ohio to deliver the remaining narcotics, CS 1 was instructed to contact the number 513-568-2623 upon arriving in Cincinnati. CS 1 S stated that CS 1 did not meet or see anyone while CS 1 was in the Milwaukee area and a complete debrief of the CS is pending.

17. CS 1 also provided information regarding "Rico," who she would communicate with using telephone number 414-627-1515. CS 1 indicated "Rico" was a black male. CS 1 indicated she would use telephone number 414-627-1515 to talk with "Rico." CS 1 indicated that "Rico" would direct CS 1 to certain locations to drop off the drugs also. Based on the investigation into the DTO and review of law enforcement databases, case agents identified "Rico" as Rico SMITH.

18. Case agents are aware that SMITH was convicted in the Eastern District of Wisconsin Case 20-cr-41 of use of a communications facility to distribute a controlled substance, contrary to Title 21, United States Code, Section 843(b).

19. CS 1 information is credible and reliable, CS 1's information has been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, interviews, and telephone toll analysis. CS 1 has made statements against CS 1's penal interest related to CS 1's direct involvement in illegal activity, including the transportation of narcotics. CS 1's has a prior conviction for retail theft, prior arrests for simple domestic assault, and simple assault. CS 1 is cooperating for judicial consideration.

### b. RICO and COLLINS

20. Case agents learned that the number 786-208-2153, had been in contact with telephone number 414-614-5396, which case agents determined was being used by COLLINS at the time based on review of law enforcement databases. Telephone number 786-208-2153

contacted COLLIN's telephone number 414-614-5396 a total of 107 times between February 2, 2023, to March 28, 2023. Case agents later learned that the 786-208-2153 line was deactivated after CS 2 provided information to "Loco" that the vehicle had been towed and the illegal narcotics were seized. COLLINS's telephone 414-614-5396 was the second top contact for the user of 786-208-2153.

21.     Case agents were able to review an analysis conducted on phone tolls and observed a number identified as 414-930-8041 as a possible replacement number for 786-208-2153 based on the common contacts between the two numbers. Case agents observed that 414-930-8041 had been in contact with a number identified as 414-334-7668 a total of 1, 996 times between April 18, 2023, and November 6, 2023. Case agents reviewed law enforcement databases and identified telephone number 414-334-7668 is a number associated to the live-in girlfriend of SMITH, identified as Kimberly NEAL.

22.     Case agents also identified 36 contacts between telephone number 414-930-8041 and telephone number 414-233-8860 from April 1, 2023, to November 26, 2023. Case agents reviewed law enforcement databases and open-source records and identified telephone number 414-233-8860 as number previously used by SMITH. Case agents also identified 9 contacts between telephone number 414-930-8041 and 470-534-8903 from September 12, 2023, to September 29, 2023. Case agents reviewed law enforcement databases and identified telephone number 470-534-8903 as a number belonging to Glenda WILLIAMS. Case agents determined WILLIAMS is an aunt of SMITH , through review of law enforcement databases.

23.     Case agents have identified 32 contacts between telephone number 414-930-8041 and 414-627-2727 between May 8, 2023, and October 8, 2023. Case agents are aware that telephone number 414-627-2727 is a number being used by an individual known as "Fast" who has

Page 8

conducted multiple fentanyl transactions with a CS 2 involved in a separate drug investigation being conducted.

24. On August 16, 2023, case agents spoke with a CS 2. CS 2 stated that an individual known as "Fast" sells fentanyl and cocaine in the greater Milwaukee area. CS 2 stated that "Fast" has been using telephone number 414-627-2727 to conduct sales of fentanyl and cocaine for the past year. CS 2 stated that once the order is placed on 414-627-2727, either "Fast" or one of his "crew" delivers the narcotics at various locations in the greater Milwaukee area. CS 2 stated that most narcotics transactions with "Fast" occur in public areas chosen by "Fast." During this investigation, case agents identified a vehicle being operated by "Fast" registered to Kimberly NEAL, again the known live-in girlfriend of SMITH.

25. CS 2's information is credible and reliable because CS 2 has given information concerning individuals involved in illegal activities. CS 2's information has been independently verified through this investigation, including through controlled drug buys, queries of law enforcement databases, and surveillance. CS 2 has made statements against his/her penal interest. CS 2 has felony convictions for Manufacture/Delivery Cocaine and Forgery. CS 2 has no arrests or convictions relating to dishonesty. CS 2 is cooperating with law enforcement for monetary compensation.

26. Case agents were aware that COLLINS had a role in the MERIWETHER DTO but was unsure of his role initially. Case agents believe that COLLINS may supply fentanyl to the MERIWETHER DTO. This is based on interviews following the homicide of DTO member RODRIGUEZ-PEREZ, and preliminary information of COLLINS connections to telephone number 786-208-2153 number, which was connected to the set up the delivery of kilos of fentanyl, and call detail records for the replacement telephone number 414-930-8041.

Page 9

27. Case agents also identified a text message in the cell phone belonging to RODRIGUEZ-PEREZ, where the address 2679 North Holton Street was shared. Case agents identified 2679 North Holton Street, Milwaukee, Wisconsin as a cellphone store which public databases indicated is owned by Brianna MADDEN, COLLINS's girlfriend and mother of his child. Case agents located text messages where RODRIGUEZ-PEREZ stated the cellphone store is actually owned by COLLINS. Based on my training and experience, I am aware that drug traffickers and other engaged in illegal activities may often place legal businesses in family members' or significant other's names in an attempt to distance the legal business from the illegal conduct of a drug trafficker. There are also a total of 92 calls between COLLINS's telephone number 414-614-5396 and RODRIGUEZ-PEREZ's telephone 414-807-2942 between February 2, 2023, and March 9, 2023.

28. Case agents reviewed call details record of COLLINS's telephone 414-614-5396, during the investigation and learned between September 23, 2022, and October 27, 2022, COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-416-0868 a total of 32 times. Between January 1, 2023, and February 10, 2023, COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-519-2009, a total of 20 times. Between January 14, 2023, and February 10, 2023, COLLINS's telephone 414-614-5396 contacted FRANKLIN's telephone 414-254-8676 a total of 5 times. Between September 10, 2022, and December 9, 2022, COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone 414-426-0464 a total of 26 times. Between November 10, 2022, and March 19, 2023, COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone 414-807-2942, a total of four times. Between January 20, 2023, and January 26, 2023, COLLINS's telephone 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone 512-940-1862 a total of four times. On March 28, 2023, the day after the

Page 10

homicide of RODRIGUEZ-PEREZ, COLLINS's telephone 414-614-5396 contacted M.N.'s telephone 262-914-4276, RODRIGUEZ-PEREZ's girlfriend, a total of two times. Around March 29, 2023, COLLINS's telephone 414-614-5396 was dropped.

29. Case agents listened to almost a hundred Wisconsin Department of Corrections (DOC) recorded jail calls between COLLINS's telephones 414-614-5396 and 414-588-2760 and inmates. These recorded jail calls were made between January 2023 to present. Case agents became familiar with COLLINS's voice based on these recorded jail calls.

30. For example, after COLLINS's dropped telephone number 414-614-5396, case agents attempted to determine his new number. Case agents reviewed records with DOC and as of June 23, 2023, telephone number 414-588-2760 was registered through the Wisconsin DOC to Qian COLLINS. This information is received via payment history made to various accounts with the DOC.

31. Based on Wisconsin DOC records, case agents located a call to telephone number 414-588-2760 on June 23, 2023, at 3:38 pm from the Redgranite Correctional Institution. The call was placed from the account of inmate Anthony L. James. The call was 12:29 in duration and upon the initial conversation, the individual's voice on the 414-588-2760 line appeared to be Qian COLLINS. Based on prior record jail calls, case agents are familiar with COLLINS's voice did confirm that COLLINS was the individual on the call. During the call, the inmate asked COLLINS how his vacation was. Based on the investigation into COLLINS, case agents were aware that COLLINS had just recently been in Houston, Texas and returned on June 18, 2023, or June 19, 2023.

32. From June 1, 2023, to June 23, 2023, there were 33 attempted calls from inmates with Wisconsin DOC to 414-588-2760 with 12 of the calls connecting. During these 12 connected

Page 11

calls, the same individual, believed to be COLLINS, appears to be the person on telephone 414-588-2760. As noted previously, Case agents believe that the person is in Qian COLLINS based on the familiarity of COLLINS voice and DOC information regarding the telephone number.

33. It is common that those individuals engaged in drug trafficking use more than one cellphone. This is done to attempt to insults a drug trafficker and to evade law enforcement detections. Case agents located a second telephone number likely being used by COLLINS.

34. Case agents identified telephone number, 414-419-4427, believed to belong to COLLINS. Case agents initially learned that 414-419-4427 had multiple contacts with number associated to the ADTO.

35. After identifying telephone number 414-419-4427, case agents conducted a call detail analysis and learned that there were calls to the following numbers known to be closely associated to or with COLLINS. Between March 16, 2023, and June 11, 2023, there have been 281 contacts between telephone number 414-419-4427 and telephone number 414-524-9899. Based on a review of law enforcement database and forensic extractions of RODRIGUEZ-PREREZ's and FRANKLIN's cellphones, case agents believe 414-524-9899 is used by Luz TORRES, who has an unidentified role in this investigation. TORRES's telephone 414-524-9899 has been in contact with several different targets of the ADTO, Daniel RODRIGUEZ-PEREZ, and Dontrell FRANKLIN.

36. Between April 5, 2023, and June 9, 2023, there have been 28 contacts between telephone number 414-419-4427 and telephone number 414-588-2760, which is another number known to be used by COLLINS as previously described.

37. Between January 1, 2023, and May 25, 2023, there were 95 contacts between telephone number 414-419-4427 and 414-349-3267. Case agents identified 414-349-3267 as a

Page 12

telephone number used by Briana MADDEN. Case agents reviewed law enforcement databases which indicated telephone number 414-349-3267 was connected to MADDEN. Also, during the investigation, COLLINS was observed operating rental vehicles. Case agents obtained records that indicated MADDEN was the individual that rented the vehicles COLLINS's operated and provided telephone number 414-349-3267 to the rental company.

38. Between September 12, 2022, and March 23, 2023, there were 119 contacts between telephone number 414-419-4427 and 414-614-5396. As described above, COLLINS previous number was 414-614-5396. This is consistent with 414-614-5396 being changed or dropped by the ADTO after the homicide of Daniel RODRIGUEZ-PEREZ on March 27, 2023.

39. Case agents learned that there was a suspected fatal heroin/fentanyl overdose on June 10, 2023, Waukesha, Wisconsin. [Waukesha Police Department (WKPD) IR #23-22176]. Case agents learned that WKPD completed a Forensic Download of the victim's cell phone and observed "drug related messages" between the victim and the phone number 414-419-4427. Case agents learned that the victim had sent several messages to 414-419-4427 on June 3, 2023. The messages were consistent with the victim attempting to purchase heroin from the user of 414-419-4427. There was no response from the 414-419-4427. Case agents believe that they have identified a separate source of the heroin which led to the fatal overdose of the victim. The name associated with the 414-419-4427 in the victim's phone was identified as "aaa".

### c. OWENS and COLLINS

40. During the investigation into COLLINS, case agents were separately working on another investigation and had conducted multiple transactions with a subject identified as Marquan OWENS. During the investigation into OWENS, case agents identified a second number used by

OWENS, telephone number 414-885-9481. OWENS provided this number to an UC, which is described in more detail below.

41. Case agents reviewed call details records between COLLINS' telephone number 414-588-2760 and OWENS' telephone number 414-885-9481. Between March 31, 2023, to December 8, 2023, case agents observed 408 contacts between COLLINS' telephone number 414-588-2760 and OWENS' telephone number 414-885-9481. Case agents also observed 329 contacts between OWENS' telephone number 414-885-9481 and COLLINS's previous telephone number 414-614-5396. Case agents reviewed publicly viewable social media for COLLINS and OWENS and observed they were frequently in each other's. Instagram posts, further described below. Based on my training, experience, the investigation into COLLINS and OWENS, and the information described above, case agents believe that COLLINS and OWENS are working together to distribute controlled substances. Case agents further believe that OWENS is being supplied controlled substances by COLLINS.

42. On December 5, 2023, agents learned that a DEA TFO, who was acting in an undercover capacity was approached by an individual who identified himself as begin "Rockey" and provided a phone number of 414-885-9481, OWENS' telephone number.

43. Case agents discussed this interaction with other law enforcement are aware that OWENS is known as "Rocky", and the number 414-885-9481 is associated to OWENS. During this encounter with the UC, OWENS provided the UC with a "sample" of fentanyl, and in the video obtained by the UC OWENS is observed in the front passenger seat with a large amount of what appears to be fentanyl in his lap, along with a second individual who is operating the vehicle also had a large amount of what appeared to be either fentanyl or cocaine in his lap as well. Case

agents later learned that the vehicle was a rental vehicle not associated with OWENS. Case agents did review the video and confirmed that OWENS was in fact the individual in the video.

### C. CONTROLLED BUYS WITH COLLINS' DTO

44. On June 15, 2023, case agents were contacted by Washington County (WASO) Metro Drug Unit Investigator Shaun Whealon. Investigator Whealon had conducted a debrief with CS 3, who provided information for a known drug dealer. CS 3 knew the drug dealer as "Q." CS 3 stated that he/she had been purchasing crack cocaine, heroin, and methamphetamine from "Q" since 2021 and estimated he/she have completed "hundreds" of transactions with "Q" during that time frame. CS 3 stated that he/she would complete transactions for smaller amounts, anywhere from 1-4 grams at a time.

45. CS 3 stated that the transactions usually occur in the area of East Meinecke Avenue and North Holton Street or West North Avenue and East Oakland Avenue, all in Milwaukee, Wisconsin. CS 3 indicated that he/she was aware that "Q" owns a cellphone store in the area of North Holton Street, Milwaukee, Wisconsin. Case agents have identified that COLLINS owns a cell phone store identified as Cellular Journie LLC, located at 2679 North Holton Street, Milwaukee, Wisconsin, which is listed in MADDEN's name. CS 3 stated that there have been multiple times another individual, identified as a "Nephew" of "Q" would complete the transaction. CS 3 described this individual as a "younger" black male.

46. CS 3 provided two numbers for "Q", telephone numbers 414-419-4427 and 414-588-7377. CS 3 stated that "Q" primarily utilized the 414-419-4427 line but also utilized the 414-588-7377 line. The 414-588-7377 line was identified as "Q's second number" in the cell phone belonging to CS 3. Investigator Whealon then completed a photo-line-up with CS 3, who confirmed the person she knew as "Q" was in fact Qian COLLINS.

47. CS 3 stated that he/she had sent people to pick up heroin for him/her in the past. CS 3 indicated that he/she would be able to call COLLINS and tell COLLINS that he/she would not be able to make it and that someone else was coming to pick up for him/her.

48. For several reasons, case agents believe CS 3's information is reliable and credible. Substantial parts of CS 3's information have been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, and the forensic extraction of CS 3's telephone. CS 3 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including the distribution of narcotics, and association with members of the ADTO. CS 3 has misdemeanor convictions for Possession of THC, Possession of Drug Paraphernalia, Possession of Cocaine, and Neglecting a Child. CS 3 has felony convictions for Possession with Intent to Distribute THC, Possession of Narcotic Drug, and Bail Jumping. CS 3 is not cooperating for judicial consideration and is not receiving payment for his/her cooperation.

49. During the below listed controlled buy of controlled substances the CSs and/or UC placed a recorded phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location. The CS was searched before and after the controlled purchase with no drugs, money, or weapons located. The CS and/or UC debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance and the target was identified by the CS through photographs.

**a. Controlled Buy June 20, 2023, with BRUCE using 414-419-4427**

50. Based on this information, an attempted controlled transaction between COLLINS and an agent acting in an undercover capacity (UC) was planned for the morning of June 20, 2023.

Prior to the transaction taking place, Investigator Whealon had CS 3 place a call to COLLINS at telephone number 414-419-4427. COLLINS was not the individual who answered the phone. CS arranged for a transaction of heroin and cocaine in exchange for $350.00. Once the call was complete, CS 3 stated that the "Nephew" answered and would likely complete the transaction. During the call, CS 3 informed the "Nephew" that he/she could not make it down and would be sending someone else instead. The "Nephew" stated that the other person could come down and directed CS 3 to have that person come to the area of North 42nd Street and North Sherman Boulevard, Milwaukee, Wisconsin and to call the "Nephew" when that person was close.

51. The UC then traveled to the area and contacted the "Nephew" at telephone number 414-419-4427 line. "Nephew" directed the UC to the alley between North 46th Street and North 47th Street, just north of West Fiebrantz Avenue, Milwaukee, Wisconsin. The UC subsequently exited his/her vehicle and walked into the alley and observed a black Honda Civic bearing Wisconsin license plate AMR- 4746 parked in the alley. The UC noted that there were two individuals in what seemed to be a line at the front driver's side window. The UC observed the operator conduct two hand-to-hand transactions with this individual. The UC then walked up to the operator, who was alone in the vehicle. The UC purchased suspect heroin and cocaine from the operator. The UC also noted that there was at least one other person behind him/her, who appeared to be waiting to purchase narcotics as well. After completing the transaction, the UC returned to his/her vehicle and met with case agents after leaving the area.

52. The UC turned over the suspected heroin and cocaine to case agents and indicated the individual who completed the transaction was a younger, black male, with a tattoo of the name "Tasha" on his right arm. The suspected heroin and cocaine were later tested and weighed. The

Page 17

net weight of the suspected heroin 2.1 grams and tested positive for Fentanyl.  The net weight of the cocaine was 1.4 grams and tested positive for cocaine.

53.     Case agents reviewed used Wisconsin DOC records, booking photos and Wisconsin Department of Transportation  photos to identify "Nephew."  Based on the review of these databases, case agents believed "Nephew" was Deante K. BRUCE  (DOB XX/XX/1997). The UC was provided Wisconsin DOT and public viewable social media photos of BRUCE and verified BRUCE as the individual who completed the transaction with the UC and was the operator of the Honda Civic.  Case agents learned that BRUCE was on probation in Wisconsin for a felony Possession of Narcotic Drug and a misdemeanor charge of Carrying a Concealed Weapon regarding Milwaukee County Court Case # 2021CF004261.

54.     From review of DOC records, case agents learned that BRUCE provided a residence address of 9261 West Allyn Street, Unit #F, Milwaukee, Wisconsin.  Also, BRUCE provided his employer as Cellular Journie, COLLINS's cell phone store.  Case agents also review Wisconsin DOT in which COLLINS has a listed address of 9261 West Allyn Street, Unit #F, Milwaukee, Wisconsin.

### b.  Controlled Buy June 27, 2023, with COLLINS using 414-419-4427

55.     On June 27, 2023, the UC contacted telephone number 414-419-4427.  COLLINS picked up telephone number 414-419-4427, which case agents were able to determine based on review of prior calls by COLLINS.  COLLINS instructed the UC to "come to the east side" when questioned if they could meet by the UC.  As the UC approached the general vicinity of the East Side of Milwaukee, he/she contacted telephone number 414-419-4427.  Based on the voice it appeared to be COLLINS that was using telephone number 414-419-4427.  COLLINS instructed the UC to go to the area of North 19th Street and West North Avenue, Milwaukee, Wisconsin.

Page 18

The UC traveled to that location and subsequently parked in the area of North 19th Street and West Monroe Street. A black Toyota Rav 4, bearing Arizona license plate CWN-7763, pulled up next to the UC and rolled the front passenger window down slightly and instructed the UC to follow. The UC then followed the Rav 4, to an alley between North 18th Street and North 19th Street just south of West Monroe Street. The UC exited his/her vehicle and approached the front driver's side door of the Rav 4. The operator appeared to be alone inside the vehicle according to the UC, but the operator only slightly opened the door during the transaction. The UC stated that he/she observed a large bag of marijuana and a plastic bag containing a tan rock like substance believed to be heroin/fentanyl on the lap of the operator. The operator then stated that he did not have any "Tina." Based on my training and experience, I know "Tina" to be street slang for methamphetamine. The UC then informed the operator he/she was looking for "boy" and completed a purchase of heroin/fentanyl for $400.00 in pre-recorded currency.

56. The substance was later weighed and tested by case agents. The weight was determined to 5.4 grams and tested positive for fentanyl. The UC did not see COLLINS face during the interactions due to the tint and manner in which the door was opened during the transactions. However, the UC was able to see multiple tattoos on the right arm of driver, which were very distinct. The UC later reviewed photos of COLLINS, via COLLINS's public Instagram account "**qianbacklilbih**". After reviewing photos on COLLIN's Instagram page, which showed COLLINS's tattoos, the UC confirmed that the individual he/she conducted the transaction with was in fact Qian COLLINS based on the similar tattoos.

57. Case agents reviewed audio from the recorded calls and recording device that was activated during the transaction. After hearing the voice of the operator on the call and during the

transaction, case agents believe that it was Qian COLLINS based on the familiarity of COLLINS's voice.

58. Case agents and members of the surveillance team followed COLLINS after that transaction and witnessed one additional hand to hand transaction between COLLINS and an unknown individual shortly after the transaction with the UC on West Highland Avenue, Milwaukee, Wisconsin.

59. Case agents determined that the vehicle used by COLLINS during the transaction was rented through Avis/Budget Rental. Case agents identified that Avis/Budget Rental was also used on two previous rental vehicles operated by COLLINS. Later, on June 27, 2023, case agents received information from Avis/Budget that the individual on the rental agreement was Brianna MADDEN, who is the girlfriend of COLLINS. MADDEN also was the listed individual on the two previous rental agreements as well. Madden listed her address as 2456 North Cramer Street, Milwaukee, Wisconsin, and a phone number of 414-349-3267. Case agents know that address to be a valid address for MADDEN and COLLINS. The rental agreement was valid through July 6, 2023.

### c. Controlled Buy July 12, 2023, with WINSTON using 414-419-4427

60. On July 12, 2023, the UC contacted 414-419-4427 in anticipation of completing a transaction with BRUCE or COLLINS. The UC went to the meet location behind a Walgreen's located at 5115 West Capitol Drive, Milwaukee. Wisconsin. During this transaction, the UC completed a controlled transaction with an individual identified as Kevin WINSTON, who was later identified with his photo from Wisconsin DOT. During the transaction the UC purchased 6.8 grams of a substance that later tested positive for fentanyl.

61. WINSTON was alone during the transaction and was operating a Nissan Rogue bearing WI license plate ARE-7654 (Rogue), which did not have a vehicle associated to that registration through the WI DOT. Case agents later learned that the vehicle had been involved in an auto accident in the City of Milwaukee on March 4, 2023, and it was documented that WINSTON was the owner of the vehicle during the investigation. Case agents then learned that WINSTON has a listed WI DOT address of 9261 Allyn Street, Milwaukee, Wisconsin, which is a former address used by COLLINS as previously described. 9261 Allyn Street, Milwaukee, Wisconsin was the address previously reported by BRUCE to agents with the Wisconsin DOC. Case agents believe that WINSTON and COLLINS are related, and it is believed that they share the same mother, making them biological half-brothers based on review of law enforcement databases.

**d. Controlled Buy August 24, 2023, with BRUCE using 414-419-4427**

62. On August 24, 2023, the UC contacted 414-419-4427 in anticipation of completing a drug transaction with BRUCE, COLLINS, or WINSTON. The UC went to the agreed upon meet location behind Bethel AME Church located at 4103 North 35th Street, Milwaukee, Wisconsin. During this transaction, the UC completed a controlled buy of narcotics with BRUCE, who case agents previously identified. BRUCE was operating the Rogue. Case agents are familiar with the Rogue from previous transactions and are aware that the Rogue is known to be operated by WINSTON. The UC did observe that there was an unknown black male in the front passenger seat of the Rogue, who the UC was not familiar with and had no contact with during the drug transaction. BRUCE provided the UC a white plastic surgical glove that contained the controlled substance inside of it during the transaction in exchange for money. During the transaction the UC purchased 14.8 grams of a substance that later tested positive for fentanyl.

Page 21

**e. Controlled Buy September 13, 2023, with COLLINS using 414-419-4427**

63.    On September 13, 2023, the UC contacted 414-419-4427 in anticipation of completing a transaction with BRUCE, COLLINS, or WINSTON.  The UC went to the meet location Chubby's Cheesesteaks located 2232 North Oakland Avenue, Milwaukee, Wisconsin.  During the initial call to 414-419-4427 and follow up calls with 414-419-4427, case agents believed that the individual answering 414-419-4427 was in fact COLLINS based on the familiarity with COLLINS voice.

64.    Case agents had set up pre-surveillance in the area of COLLINS residence located at 2456 North Karmer Street, Milwaukee, Wisconsin.  After the UC had arrived in the area of Chubby's Cheesesteaks, case agents observed a black Toyota Camry bearing Illinois license plate FP215094 (Camry), exit the driveway from COLLINS residence.  Case agents followed the Camry to Chubby's Cheesesteak, which is approximately one-half mile distance from COLLINS residence.

65.    The UC then received a call from 414-419-4427 and was directed to follow the Camry, which eventually stopped in an alley way in the area of North Farwell Avenue and East Lafayette Place, Milwaukee, Wisconsin.  The UC then exited the vehicle and completed the transaction with COLLINS, who the UC is familiar with and positively identified COLLINS.  The UC stated that COLLINS was the only individual in the Camry.

66.    Case agents continued surveillance on COLLINS after the transaction and confirmed COLLINS was indeed the operator of the Camry when COLLINS stopped and exited the Camry at a Cheb Hut Toasted Subs located at 2907 North Oakland Avenue, Milwaukee, Wisconsin.

67.     Case agents learned that the Camry was a rental vehicle from Avis/Budget rental. Case agents later received information from Avis/Budget that the person listed on the rental agreement for the Camry was Brianna MADDEN, COLLINS' girlfriend as previously described, and resides at the address on North Kramer Street, which is the listed address on the rental agreement.  The vehicle was rented through September 30, 2023, by MADDEN.

### f.   Controlled Buy on October 6, 2023, with WILDER using 414-419-4427

68.     On October 6, 2023, the UC contacted 414-419-4427 in anticipation of completing a transaction with BRUCE, COLLINS, or WINSTON.  The UC was in contact with telephone 414-419-4427 several times prior to the transaction and during these calls, neither the UC nor case agents had any familiarity with the individual utilizing the 414-419-4427 line.  The UC was directed by the unknown individual to respond to North Booth Street and East Meinecke Avenue in Milwaukee, Wisconsin to complete the anticipated transaction of 25-30 grams of fentanyl in exchange for $2,100.00.

69.     After arriving in the area, the UC was approached by a gray Audi Q5 bearing Wisconsin Fleet license plate 15664AFT (Audi).  The operator, described by the UC as an unknown heavy set black male with dreads, directed the UC to an alley way located east of North Booth Street, where the UC exited their vehicle and approached the driver's side window of the Audi and completed the transaction with the operator, who was the sole occupant of the Audi.  The suspected fentanyl obtained from the target later tested positive for fentanyl and case agents obtained a total weight of 25.6 net grams and 85.6 gross grams.

70.     After the transaction, case agents learned the registration for the Audi was through Enterprise car rental and later obtained a copy of the rental agreement from Enterprise.  The only individual listed on the rental agreement is Shannon D. WILDER, with a listed address of 3234

Page 23

North Palmer Street, Milwaukee, WI, and a DOB of XX/XX/1989. Case agents are aware that WILDER, Shannon is a relative of COLLINS, believed to be cousins based on information learned in the investigation.

71.     Case agents reviewed video obtained by the UC during the transaction and after reviewing a still screenshot of the target who completed the drug transaction, case agents were able to positively identify WILDER after reviewing a Wisconsin Department of Transportation driver's license photo of WILDER.

### g. Controlled Buy on November 16, 2023, with BRUCE using 414-419-4427

72.     On November 16, 2023, the UC contacted telephone number 414-419-4427 in anticipation of completing a transaction with the COLLINS' DTO. The UC was in contact with the telephone number 414-419-4427 several times prior to the transaction. During these calls, neither the UC nor case agents had any familiarity with the individual utilizing telephone number 414-419-4427. The UC was directed by the unknown individual using telephone number 414-419-4427 to respond to the "east side" to complete the anticipated transaction of 25-30 grams of fentanyl in exchange for $2,300.00 in prerecorded US Currency. The UC was eventually directed to the area of North 10th Street and West North Avenue, Milwaukee, Wisconsin

73.     After arriving in the area, the UC parked behind a Blue Honda Odyssey Minivan (Minivan), bearing Wisconsin license plate, AUN-7847, which was parked in an alley located between North 10th and North 11th Street, just north of North Lindsey Street, Milwaukee, Wisconsin. The UC then exited their vehicle and completed the transaction with BRUCE, who was the front seat passenger of the Minivan. The operator of the Minivan was later identified as Maurice HAMPTON JR. Based on the investigation into COLLINS and review of publicly

viewable social media and law enforcement databases, case agents believe HAMPTON JR is a cousin of COLLINS.

74. During the transaction, the UC purchased 28.9 grams of a substance, which later testing positive for fentanyl.

### D. Controlled Buys with Owens DTO

75. Case agents spoke with CS 4 regarding CS 4's knowledge of drug traffickers in the Eastern District of Wisconsin. CS 4 stated she/he previously purchased controlled substances from "Rocky" and "DJ", who worked together to distribute controlled substances. CS 4 later identified "Rocky" as OWENS and "DJ" as JACKSON, with photos obtained by law enforcement. CS 4 stated she/he would contact "Rocky" and "DJ" using telephone number 414-627-3832. CS 4 began completing controlled transactions with OWENS and JACKSON shortly after the debrief with CS 4.

76. CS 4's information is credible and reliable. CS 4 has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS 4 is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County. CS has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses. CS 4 was arrested on new drug offenses following CS 4's debrief and controlled buys outlined below. No additional consideration has been provided to CS 4 following CS 4's newest drug offenses arrest.

Page 25

### a. Controlled Buy June 15, 2023, with OWENS and Jackson using 414-627-3832

77. On June 15, 2023, OWENS with the assistance of an individual identified as Deangelo JACKSON did conduct a drug transaction with CS 4.

78.

79. CS 4 contacted telephone number 414-627-3832 to arrange a controlled buy of drugs from OWENS. OWENS and CS 4 met in the alleyway in the area of North 17th Street and West Olive Street, Milwaukee, Wisconsin. OWENS provided CS 4 with 5.3 grams of a substance that later tested positive for heroin and 18.9 grams of a substance that later tested positive for methamphetamine. CS 4 provide OWENS $700 in exchange for the controlled substances. During the transaction OWENS was operating a 2014 Mitsubishi Outlander bearing Wisconsin registration ASE-2725 (Outlander) which is registered to OWENS.

80. During the transaction, OWENS asked CS 4 if she/he had a scale to which CS4 indicated that she/he did not. OWENS proceeded to meet with an individual, later identified as Deangelo JACKSON through law enforcement databased, in the alleyway. JACKSON provided OWENS with a scale to weigh out the controlled substances.

### b. Controlled Buy July 14, 2023, with TENNER using 414-627-3832

81. On July 14, 2023, CS 4 purchased 7.9 g of fentanyl and 29.0 grams of cocaine from an individual identified later as Kevin TENNER.

82. During this transaction CS 4 called telephone number 414-627-3838 which is a previous number that CS 4 has used to complete drug transactions with OWENS and JACKSON. CS 4 agreed to meet with the ADTO member using telephone number 414-627-3838 in the area of North 72nd Street and West Hampton Avenue, Milwaukee, Wisconsin. CS 4 went to the

Page 26

location and meet with TENNER.  TENNER provided CS 4 the suspected controlled substances in exchange for cash $1800.  During the drug transaction, TENNER informed CS 4 that he was the "new morning guy."  TENNER was operating OWENS' Outlander.

83.     Following the drug transaction, CS 4 provided case agents with the suspected controlled substances.  One substance weighed 7.9 grams and field tested positive for fentanyl. The other weighed 20 grams and field tested positive for cocaine.  Case agents reviewed the video recording of the drug transaction and law enforcement databases.  Based on the review case agent identified the ADTO member for this drug transaction as TENNER.  CS 4 later confirmed with a photo that TENNER was the individual that sold the CS 4 the fentanyl on July 14, 2023.

### c.    Controlled Buy July 31, 2023,  with TENNER using 414-627-3832

84.     On July 31, 2023, CS 4 contacted telephone number 414-627-3832 to arrange a controlled drug transaction of 7.3 grams of methamphetamine and 26.3 net grams of heroin.  CS 4 was told to go to the area of North 49th Street and West Garfield Avenue, Milwaukee, Wisconsin. CS 4 went to the area and meet with TENNER.  TENNER was operating a 2017 Hyundai Tucson, bearing Wisconsin license plate AFB-9806.   TENNER provided CS 4 with the suspected controlled substances in exchange for $2,500.00.  Case agents later learned that Hyundai Tucson was registered to Tiandra CLARK.  Based on review of law enforcement databases, CLARK had previously used 3226 North 33rd Street, Milwaukee, Wisconsin. Based on review of law enforcement databases, case agents are aware that TENNER has also used 3226 North 33rd Street, Milwaukee, Wisconsin.

85.     Following the controlled drug transaction, CS 4 provided case agents with the suspected controlled substances.  Case agents tested the substances.  The one substance weighed

26.3 grams and tested positive for fentanyl. The other substances weighed 7.3 grams and tested positive for methamphetamine.

### d. Controlled Buy July 29, 2023, with OWENS using 414-627-3832

86. On July 29, 2022, CS 4 arranged to purchase heroin from telephone number 414-627-3832. CS 4 was told to go to the Chick-fil-A restaurant located in Brookfield, Wisconsin. CS 4 arrived and met with OWENS. OWENS provided CS 4 with the suspected heroin in exchange for $640. OWENS arrived operating a 2017 Ford Escape bearing Wisconsin registration APG-2029 (Escape).

87. Following the controlled drug transaction, CS 4 provided case agents with the suspected controlled substances. Case agents tested the substance, which weighed 9.9 grams and tested positive for fentanyl.

### e. Controlled Buy October 4, 2022, with OWENTS using 414-627-3832

88. On October 4, 2022, CS 4 contacted telephone number 414-627-3832 to arrange a drug transaction with OWENS. CS 4 met with OWENS in the area of North 22nd Street and West Congress Avenue, Milwaukee, Wisconsin. OWENS was operating a rental vehicle with a Florida registration of GWIX68. CS 4 provided OWENS $1,100 in exchange for 11 grams of suspected fentanyl and 28 grams of suspected methamphetamine. .

89. Case agents later weighed, and field tested the suspected controlled substances. OWENS provided CS 4 with 11.0 grams of a substance tested positive for fentanyl, and 28.8 grams of substance that tested positive for methamphetamine.

### D. Social Media of DTO Members

#### a. COLLINS "qianbacklilbih" and "yonbacklilbih"

Page 28

90.    Case agents have identified two Instagram accounts related to Qian COLLINS.  The first account has a username of "**qianbacklilbih**".  In that Instagram account, there is a name associated, which is "Qian Back LilBih".  There was also a link for a Facebook profile, which goes directly to a Facebook account for Qian COLLINS, identified as "Qian Back LilBih".

91.    Case agents identified the second Instagram account for Qian COLLINS being identified as "yonbacklilbih".  The name associated to the account is "Yon Back LilBih".  Case agents have reviewed both Instagram accounts, which are open and are accessible to the public.  Each account has photos and videos with COLLINS and his known live-in girlfriend, Brianna MADDEN, in them, along with other members of the COLLINS's DTO.

i)    Account "**qianbacklilbih**" (Figure 1)

Page 29



Figure 1

92.     Case agents reviewed a post from August 19, 2023, from account "**qianbacklilbih**".  The post showed COLLINS standing wearing a black/gray pair of pants, with white tennis shoes, and a black/gray baseball hat with an unknown type of jersey (Figure 2).  There are two photos associated to this post.  Based on my training and experience, the second photo shows COLLINS sitting down next an estimated several hundred dollars in US currency.  The money is spread out around him.

Page 30



Figure 2

93. Case agents reviewed multiple videos that were posted on October 18, 2023, on account "**qianbacklilbih**". In one video that was 24-seconds in length, it appeared that there are several individuals inside a garage (or storage-type facility), where there are several overhead doors, mechanical equipment, and multiple vehicles, including a food truck. The video began with an unidentified black male, spreading out a large amount of US currency on top of the hood of a white vehicle, and holding a bottle containing what appeared to be a thick purple liquid (Figures 3 and 4). Based on my training, experience, and investigation into the DTO, I believe the thick purple liquid is consistent with "Lean." During the investigation into COLLINS, case agents

Page 31

located several videos and pictures from COLLINS's account "**qianbacklilbih**", which COLLINS DTO discuss "lean". Based on my training and experience "lean" is a syrup-type drink that has codeine and promethazine typically mixed with a soft drink or an alcoholic beverage which allows the user to obtain a high from drinking. The video also shows numerous individuals holding large amounts of cash (Figure 5). Based on my training and experience, I am aware that individual's associated with drug trafficking are known to show large amounts of cash. Case agents believe the cash shown in the video are illicit funds based on the individuals involved and the lean being displayed as well. The video also panned to the side, case agents observed OWENS wearing a multicolored leather jacket with a backwards hat and sunglasses (Figure 6). Case agents identified this individual as Marquan OWENS, who is another target of this investigation as previously described.



(Figure 3)

Page 32



(Figure 4)



(Figure 5)



(Figure 6)

94.     There is a second video on October 18, 2023, from account **qianbacklilbih**",  that

was posted shortly after the above-described video.  OWENS is once again seen in this video,

along with Qian COLLINS and several other members of the DTO.  In this video, based on my

Page 33

training, experience, and investigation into the DTO, I believe the members are smoking marijuana and drinking the purple drink believed to be "lean."

95.     Case agents reviewed a post from October 22, 2023, on account "**qianbacklilbih**". During the post there are two photos.  The first photo showed COLLINS standing up wearing a sweatshirt with the letters "Supreme" on it.  The second photo is a picture of the bear paw necklace and pendant, with "3278" engraved into the pendant (Figure 6).  Based on review of law enforcement databases and discussions with the Milwaukee Police Department Special Investigations Divisions, I was informed that "3278" is related to a Milwaukee based gang.  The gang "3278" broke into two separate gangs being "FNF" and "Superthrowed".  This information is consistent with several DTO members being associated to targets known as "Superthrowed Rio" and "Superthrowed Dave".  With the gangs being based in the Buffum Street area of Milwaukee. In the video of COLLINS with the pendant, there are multiple members of the DTO.  Also, in this photo from the October 22, 2023, post is a bottle of promethazine/codeine syrup with the tag partially ripped off.  It appears that the pharmacy where it was filled was located at 7115 West Capitol Drive, Milwaukee, Wisconsin.  The bottle appeared to have been filled on October 17, 2023 (five days before this was posted on Instagram).



(Figure 6)

96.     Case agents reviewed a video from the account identified as "**qianbacklilbih**" from November 25, 2023.  There is a post from another account identified as "Real_Street_Comedy" that was tagged in that video, that was posted on both of COLLINS' Instagram accounts, "**qianbacklilbih**" and "**yonbacklilbih**".

97.     Later, on November 25, 2023, there are multiple videos, which show COLLINS operating a motor vehicle.  Based on my training, experience, and investigation into the DTO, COLLINS appears to be smoking marijuana in this video also.  COLLINS is singing rap songs, while he appeared to be recording himself.  This video was again located on account "**qianbacklilbih**".

98.     On December 7, 2023, case agents reviewed an Instagram video that posted on the account "**qianbacklilbih**" which appeared to be a nightclub.  COLLINS is heard narrating the video and wishing a happy birthday to his "brother".  There is a caption in the video stating "Happy

bday lil bro love u know locked in even in the after life" with the account "big_droop2" tagged in the post (Figure 7, 8, and 9). From review of law enforcement databases, the investigation, and review of the publicly viewable account "bip_droop2", case agents believe that Maurice HAMPTON Jr utilizes the Instagram account "big_droop2". Case agents observed individuals identified in the video as Maurice HAMPTON Jr, Marquan OWENS, and COLLINS himself as he pans the cellphone. During this portion HAMPTON Jr is observed holding a black bag and throwing what appears to be US Currency, at female the dancers in the video.

  

(Figure 7)                         (Figure 8)                         (Figure 9)

    ii)       Account "**yonbacklilbih**" (Figure 10)

Page 36



(Figure 10)

99.    Case agents also reviewed videos from COLLINS's account "**yonbacklilbih**".  One video from November 25, 2023, appears to be taken inside a nightclub.  When the video begins, Qian COLLINS is observed inside of the video wearing what appears to be a large, gold necklace and pendant (Figures 11 and 12).  The pendant is a bear paw pendant and has the numbers "3278" engraved in it.  As previously noted, "3278" has ties to a Milwaukee based gang.



(Figure 11)



(Figure 12)

Page 37

100.   While reviewing the remaining photos and videos that were posted on the "**yonbacklilbih**" account, case agents observed several of the same videos and pictures that were posted on **qianbacklilbih**.   This includes the video post to both accounts for COLLINS on November 16, 2023, in which a rapper is discussing his plan to travel to Milwaukee for a show on Thanksgiving, which case agents know was organized by COLLINS.  COLLINS had several posts related to this organized event at Elmnt Lounge located at 618 North Water Street, Milwaukee, Wisconsin.   Again, case agents identified photos and videos of Qian COLLINS and Brianna MADDEN in account "**yonbacklilbih**".  One post had multiple photos and is posted on December 4, 2022, showing both COLLINS and MADDEN in the "yonbacklilbih" account.

101.   Case agents believe evidence of COLLINS and other DTO member's drug trafficking may be located on his Instagram accounts "**qianbacklilbih**" and "**yonbacklilbih**".

### b.   **Marquan OWENS "deadendent_quan"**

102.   Case agents identified an Instagram account for Marquan OWENS as "deadendent_quan" (Figure 13).   There is a link in the main page of the account "deadendent_quan" that directs any individual clicking on the link to multiple music videos posted on YouTube which feature OWENS. Case agents have conducted multiple transactions with a confidential source, purchasing fentanyl and methamphetamine directly from Owens along with DeAngelo JACKSON and Kevin TENNER. These transactions were described above.

Page 38



(Figure 13)

103. Case agents reviewed the Instagram account **"deadendent_quan"** on December 10, 2023, and there is a video post on a bottle of "Faygo crème soda" with what appears to be a syrup type liquid inside of it, which is purple in color. Based on my training, experience, and investigation into COLLINS and OWENS, I believe this substance is consistent with "lean". There is an individual who is not seen in the video, holding the bottle, and turning it around showing it off to the camera.

104. Also, on a blank video from December 10, 2023, of account **"deadendent_quan"**, case agents observed a caption stating "deadendent_quan fwu" with two fire emoji's and one heart emoji. Based on my training and experience, I know that "FWU" stand for "fuck with you" and fire emoji's are a known emoji used to describe heroin/fentanyl.

105. Case agents believe evidence of OWENS drug trafficking may be located on his Instagram account **"deadendent_quan"** .

Page 39

c. **Rico SMITH "rre_double_r"**

106.    Case agents identified SMITH as a high-level distributor of fentanyl in the Greater Milwaukee area throughout the investigation into the MERIWETHER and COLLINS DTOs, as previously described.

107.    As part of the investigation into SMITH, case agents reviewed public social media for him and identified an account of "**rre_double_r**" that is associated with him (Figure 14). SMITH Instagram account "**rre_double_r**" has very limited viewing open to the public.  Case agents were able to review recent pictures or videos are shared from recent posts on SMITH's Instagram story for account "**rre_double_r**".



(Figure 14)

108.    Case agents reviewed the available public post on "**rre_double_r**"  story and observed photos of known associates wearing what appears to be diamond and gold jewelry (Figures 15 and 16).  Based on my training and experience,  I am aware that those engaged in drug trafficking will often launder their drug proceeds through the purchases of expensive jewelry that

Page 40

have diamonds and gold.  Further, case agents observed clothing and necklaces on "**rre_double_r**" with "RRE".  Based on the investigation into SMITH, case agents reviewed law enforcement databases and open-source records and determine SMITH is the "key principal" to the business "Really Rich Empire Inc."  Further, on "**rre_double_r**" SMITH indicated he is the "Really Rich Empire CEO".  Based on my training and experience, drug traffickers, like SMITH will often use business, like "Really Rich Empire Inc." to attempt to hide and/or launder their drug proceeds.



(Figure 15)

(Figure 16)

109.    Based on the investigation, case agents believe that SMITH is a high-level distributor of heroin/fentanyl, and methamphetamine in the Milwaukee area.  As previously described, telephone numbers associated to SMITH, have been connected to other drug traffickers in the Eastern District of Wisconsin and elsewhere.  Case agents also believe evidence of his drug trafficking may be located on his Instagram account "**rre_double_r**" .

### III. <u>BACKGROUND CONCERNING INSTAGRAM</u>[1]

110. Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

111. Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

112. Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

113. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the

---

[1] The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

Page 42

primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

114. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Meta and third-party websites and mobile apps.

115. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

116. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search

Page 43

an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

117. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

118. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

119. Users can interact with posts by liking them, adding, or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

120. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's

servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

121. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

122. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

123. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

124. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily

searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

125. Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

126. Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

127. In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

128. For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

129. As described above, DTO members appear to being using the Target Account to display their criminal conduct. This includes associations with DTO members, including communications between each other Instagram accounts, videos and photos of controlled substances, and suspected proceeds from drug trafficking including large amounts of money and

Page 46

jewelry. his information is evidence to the DTO's criminal offenses. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

130. As described, DTO members appear to being using the Target Accounts to display their criminal conduct and/or communicate with other DTO members. This includes associations with DTO members, including communications between each other Instagram accounts, videos and photos of controlled substances, and suspected proceeds from drug trafficking including large amounts of money and jewelry. This information is evidence to the DTO's criminal offenses. Therefore, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

131. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos and the data associated with the foregoing, such as geo-location, date and time may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every

device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation. This is necessary, because as outlined above, the DTO use several locations yet still identified by case agents. Geographic information is important to identify place DTO members may conduct their criminal activities and/or store their drugs, drugs proceeds or documentations of their criminal activities. This information will also assist in identify who is using the account and/or tied to the criminal conduct.

132. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

133. Other information connected to the use of Instagram may lead to the discovery of additional evidence. For example, the information obtained from Meta reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

134. As explained herein, information stored in connection with the Account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an

Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date, and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

135. Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience,

such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## IV.   INFORMATION TO BE SEARCHED AND THING TO BE SEIZED

136.   I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.   Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## V.   JURISDICTION

137.   The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## VI.   CONCLUSION

138.   Based on the information above, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

139.    Based on the forgoing, I request that the Court issue the proposed search warrant.

140.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Meta.  Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Page 51

## ATTACHMENT A1
### Property to Be Searched
### Matter Number 2023R00201

This warrant applies to information associated with Instagram account "**qianbacklilbih**", that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

Page 52

**ATTACHMENT A2**
**Property to Be Searched**
**Matter Number 2023R00201**

This warrant applies to information associated with Instagram account "**yonbacklilbih**", that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

Page 53

**Property to Be Searched**
**Matter Number 2023R00201**

This warrant applies to information associated with Instagram account "**deadendent_quan**", that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT A4
### Property to Be Searched
### Matter Number 2023R00201

This warrant applies to information associated with Instagram account "**rre_double_r**", that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

Case 2:23-mj-00543-SCD    Filed 12/20/23    Page 64 of 69    Document 1

## ATTACHMENT B
### Particular Things to be Seized
### Matter Number 2023R00201

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) from July 1, 2022 to present, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the Target Accounts, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment, including any credit card or bank account number and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

6.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

Page 56

7. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from July 1, 2022, to present;

8. Privacy and account settings, including change history; and

9. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content whether created, uploaded, or shared by or with the Target Accounts, records, and other information relating to videos including live videos and videos on IGTV, images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, July 1, 2022, to present;

C. All content, records, and other information relating to communications sent from or received by the Target Accounts from July 1, 2022, to present, including but not limited to:

1. The content of all communications sent from or received by the Target Accounts, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Target Accounts, including dates and times, methods, sources, and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content present;

5. All photographs and images in the user gallery for the account;

6. All location data associated with the account, including geotags;

7. All data and information that has been deleted by the user;

8. All records of Instagram searches performed by the account, including all past searches saved;

9. All associated logs and metadata;

Page 57

D.   All content, records, and other information relating to all other interactions between the Target Accounts and other Instagram users from July 1, 2022, to present, including but not limited to:

   1.   Interactions by other Instagram users with the Target Accounts or its content, including posts, comments, likes, tags, follows (including unfollows, approved, and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

   2.   All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

   3.   All contacts and related sync information; and

   4.   All associated logs and metadata;

E.   All records of searches performed by the account from July 1, 2022, to present; and

F.   All location information, including location history, login activity, information geotags, and related metadata from July 1, 2022, to present.

Within 14 days of the service of this warrant, Meta. shall deliver the information set forth above via United States mail or courier to: Task Force Officer Aaron Hoppe, 515 West Moreland Boulevard, Waukesha, Wisconsin 53188, or via email to: ahoppe@waukeshacounty.gov (preferred method).

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER, and

Page 58

other identified and unidentified subjects during the period of July 1, 2022 to present, including,

for the Target Accounts listed on Attachment A, information pertaining to the following matters:

a. any information relating to Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER possession or purchase controlled substances;
b. lists of customers and related identifying information;
c. information related to types, amounts, and prices of firearm and drugs trafficked as well as dates, places, and amounts of specific transactions;
d. any information related to sources of firearms and drugs (including names, addresses, phone numbers, or any other identifying information);
e. communications related to drug and firearm trafficking, including electronic communications such as text and instant message;
f. any information recording Qian COLLINS, Rico SMITH, Marquan OWENS, Brianna MADDEN, Deante K. BRUCE, Kevin WINSTON, Shannon D. WILDER, Maurice HAMPTON JR., Deangelo JACKSON, Kevin TENNER schedule or travel;
g. all bank records, checks, credit card bills, account information, and other financial records;
h. The identity of the person(s) who created, accessed, or used the Target Account, including records that help reveal the whereabouts of such person(s) and the chronological and geographic context of the access, use or events;
i. Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;
j. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);
k. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and
l. Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be

Page 59

conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, case agents, including DEA, and Waukesha County Metro Drug Unit, HITDA, may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.